## IVEY v. PHIFER.

1. The act of 1807 declares void all promises, &c. by which parties stipulate to pay to each other, money or other thing of value upon the event of a horse race, or other description of gaming; consequently, where money thus wagered is deposited with a stakeholder, it may be reclaimed by either party before it is paid over, by a notice not to pay it; and it is not necessary to entitle the party giving notice to maintain an action against a stakeholder, where the latter afterwards paid it to the supposed winner.

2. No particular form of words is necessary to inform a stakeholder, that a party depositing money in his hands as a wager, objects to its payment to the supposed winner; any words expressive of a prohibition to pay, *absolutely or conditionally*, are sufficient to revoke the authority of the stakeholder to pay under any circumstances, or until the condition is performed.

3. Where a party prays a charge appropriate to the evidence and conformable to law, it should be given, and its refusal cannot be excused by giving other charges of equivalent import.

4. The jury are the judges of what facts are proved, yet it is competent for the court to charge hypothetically, or to say what the evidence establishes, if they find it to be true.

Ivey v. Phifer.

Writ of Error to the Circuit Court of Lowndes.

THE plaintiff declared against the defendant in assumpsit, for money had and received, &c. The cause was tried by a jury, and the plaintiff excepted to the ruling of the court. From a bill of exceptions sealed at the instance of the plaintiff, it appears that the plaintiff had laid a wager of $250 with one Vance, on the result of a horse race, and that he had deposited that sum with the defendant as a stakeholder; that three persons were selected as judges, and the race was run; that two of the judges decided Vance was the winner. Three witnesses testified on the part of the plaintiff, that shortly after the race was run, the defendant, in the presence of Vance, asked if he, plaintiff, objected to the payment of the money to the latter; to which the plaintiff replied, if all the judges have determined against me, then pay over the money, but I have understood that one of the judges has refused to decide against me; thereupon the defendant paid over the money.

Vance being examined at defendant's instance, testified that the defendant paid him the money in the presence of the plaintiff, and by his permission. Four witnesses testified that the plaintiff said the judges were gentlemen—he would not dispute what they did, and if they decided against him, Vance should have the money.

Plaintiff proposed to prove, that according to the rules by which the race was governed, unfair running and riding was to produce a forfeiture of the money bet; and that there was unfair running and riding; but this evidence was rejected by the court, and thereupon the plaintiff excepted.

The plaintiff prayed the court to charge the jury—1. The defendant could not rightly pay over the money to Vance on other terms than those prescribed by the plaintiff when he received it, or in virtue of some new authority; and that he was to prove that it was thus payed over. 2. If the defendant received the money to be paid over on the result of a horse race, to be run over a particular course, and under certain rules, he was bound to show that these rules were complied with, in order to justify the payment, or show some

new authority from plaintiff for that purpose. 3. If the money was to be paid over, *provided* it was fairly lost, then to justify the payment it should be shown to have been fairly won. 4. If the plaintiff said to the defendant before he paid over the money, "*provided all the judges* have decided against me, then pay over the money," unless all the judges had so decided, the defendant was not authorized to part with it. 5. If the plaintiff said to the defendant, while the money was in the hands of the latter, "*provided all the judges* have decided against me, pay over the money, but I am informed one of the judges has not so decided," and the defendant paid over the money, though one of the judges had not decided against him, then the payment was made by the defendant in his own wrong, and the plaintiff was entitled to recover. 6. If the defendant, understanding there was a controversy about the decision, and plaintiff's objection was made known to him while the money was in his hands, notwithstanding which he paid it over, then the payment was in his own wrong, and the plaintiff was entitled to recover.

These several charges were refused—the first, second and third on the ground that they were abstract. There was no proof of notice to the defendant not to pay over the money to the winner, unless it could be implied from the evidence above stated—of the effect of this evidence the court instructed the jury that they were the judges.

The court further charged the jury, that if a race had been run between the plaintiff and Vance, and lost by the former, the plaintiff could not recover in this action, unless he proved that he gave the defendant not notice to pay over the 'stakes,' previous to the payment. The question of notice being the only material one before them, they could not inquire whether the race was fairly won or lost. A verdict was returned for the defendant, and judgment was rendered accordingly.

T. J. JUDGE and J. D. F. WILLIAMS, for the plaintiff in error made the following points: 1. The testimony as to the terms of the wager, and who was the winner according to these terms was improperly excluded. [5 T. Rep. 405; 4

Taunt. Rep. 474.] 2. If the plaintiff was the winner, he had the right to recover the whole of the money deposited; and a stakeholder cannot plead the illegality of the wager. [1 B. & P. Rep. 3, 296; 12 Law Jour. 34; 13 East. R. 20.] 3. The defendant paid over the money in his own wrong— the testimony shows that the plaintiff was at least entitled to recover the amount of his own deposit. [8 B. & Cresw. R. 221; 5 T. Rep. and 4 Taunt. R. *ut supra.*]

No counsel appeared for the defendant.

COLLIER, C. J.—The act of 1807, declares that all promises, agreements, &c. made, signed, &c. by any person whatsoever, where the whole or any part of the consideration of such promise, agreement, &c. shall be for money or other valuable thing whatsoever, laid or betted at any horse race, &c. shall be utterly void and of no effect, to all intents and purposes whatsoever. [Clay's Dig. 257, § 1,] In Wood v. Duncan, 9 Porter's Rep. 227, it was decided that this statute makes void all "promises, agreements, &c." by which parties stipulate to pay to each other, money, or other thing of value, upon the event of a horse race, or other description of gaming. That was an action to recover a sum of money placed by the plaintiff in the hands of the defendant as a stakeholder—being a wager between the plaintiff and a third person upon the result of a horse race. The plaintiff gave notice to the defendant not to pay over the money to the other party, who was announced by the judges of the race as the winner, and demanded that the same be paid to him— which demand was refused. It was said by the court, that "the defendant has parted with his money, without the inducement of a consideration, either good or valuable, and upon an agreement void by the law; the plaintiff retains it without any claim, either in his own right or on account of another; according to well settled principles, he is bound *ex aequo et bono*, to refund it to him who once had possession, and has never, by any legal act parted with the right." This decision is reaffirmed in Shackleford v. Ward, 3 Ala. R. 37 —this court deciding, that where money wagered is deposited with a stakeholder, it may be reclaimed by either party

Ivey v. Phifer.

before it is paid óver, by a notice not to pay it, and no special demand is necessary to entitle the party giving notice to maintain an action against the stakeholder, where the latter afterwards paid it to the supposed winner. [See also, 11 Johns. Rep. 23; 2 Murph. Rep. 172, 458; 1 Nott & McC. R. 178; 3 Penns. R. 494; 3 N. Hamp. R. 152; 6 Yerg. R. 288; 1 C. & M. Rep. 797; 7 Price's Rep. 540; 6 D. & R. Rep. 26; 1 C. & P. Rep. 613; 2 B. & P. Rep. 467; 9 East Rep. 52; 3 Taunt. Rep. 277.]

In the case at bar, it was proved that two of the three persons selected as judges of the race decided against the plaintiff, and the defendant inquired of him if he objected to the payment of the money to the other party, to which he replied, " if all the judges have decided against me, then pay over the money; but I have understood that one of the judges has refused to decide against me." It was further testified, that the plaintiff said the judges were gentlemen—he would not dispute what they did, and if they decided against him, Vance should have the money.

There is no particular form of words necessary to inform a stakeholder that a party depositing money in his hands as a wager, objects to its payment to the supposed winner; any words expressive of a prohibition to pay, absolutely or conditionally, are quite sufficient. They should be such as would be altogether intelligible; and not of such dubious import as to leave it uncertain what the depositor intended, or whether the authority given when the money was deposited, was revoked. It cannot be assumed as a legal conclusion, that what passed between the plaintiff and defendant was insufficient to indicate the objection of the former to the delivering over the deposit. The defendant inquired if the plaintiff objected to its payment to the supposed winner, and was answered, no, if all the judges had determined that Vance was entitled to it, but he (plaintiff,) understood that one of them refused to decide against him. Is not this sufficient when connected with the fact that one of the judges had not decided adversely to the plaintiff, to establish a notice to the defendant, of the plaintiff's objection to the payment of the money? Does it not amount to a prohibition to give up the money, unless the judges were unanimous in their decision

that it had been lost? Admitting the truth of the testimony, and these questions, we think, receive an affirmative answer.

Without stopping to consider the charges prayed, in detail, it is obvious from the view taken, that one or more of them at least should have been given. The refusal to give them was not divested of error by charging that there was no proof of any notice to the defendant not to pay over the money to the winner, unless such notice could be implied from the evidence recited in the bill of exceptions, of which the jury were judges. It has been repeatedly decided by this and other courts, that where a party prays an instruction appropriate to the evidence, and conformable to law, it should be given, and the refusal cannot be excused by giving other charges of equivalent import. The jury were certainly judges of what particular facts were proved, yet if they found the testimony to be true, the court might say what it established, or it might have charged hypothetically, as is usual and proper.

What has been said is decisive of the case—the judgment is consequently reversed, and the cause remanded.