277 So.2d 421

Howard E. HAVARD

v.

STATE.

5 Div. 41.

Court of Criminal Appeals of Alabama.

Feb. 20, 1973.

Rehearing Denied March 20, 1973.

Charles M. Ingrum, Opelika, for appellant.

**148**

MacDonald Gallion, Atty. Gen., and Lloyd G. Hart, Asst. Atty. Gen., for the State.

ALMON, Judge.

Howard E. Havard was convicted of robbery and his punishment was fixed at twenty-two years imprisonment in the penitentiary.

This appeal involves the right to counsel at a lineup or showup under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149; and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

Forney E. Henderson, Manager of Winn-Dixie Quick Chek Store in Auburn, testified that on June 7, 1969, at approximately 7:20 P.M. two men armed with pistols entered the store and ordered him to open the safe; that the defendant had a pistol within a few inches of Henderson's head; and that he got a good close look at the defendant, who was wearing sun glasses and a hat. Henderson further testified that he opened the safe at the direction of the two robbers and filled a bag with approximately $2,066.00. The two armed men then fled carrying the bag of money. This whole incident took place within a period of two or three minutes and the evidence indicated that the store was well lighted and that it was still daylight outside.

Witnesses Frank Williams, John Cunningham, and Mr. and Mrs. Homer Campbell were in the store when the robbery occurred. Each of these witnesses positively identified the defendant at trial as one of the robbers.

Patsy Faircloth testified that she drove from Mobile to Auburn with a man named Jack Prentiss; that they arrived in Auburn in the early morning hours of June 7, 1969, the day of the robbery; that after they arrived she met the defendant and a man named Robert Vickers; and that they rode around Auburn together and sometime during the day stole an automobile. They left Robert Vickers' automobile on the "interstate" and went to a roadside park where they stayed most of the afternoon. She testified that later that afternoon, from outside the Quick Chek Store, they observed Mr. Henderson going to and from the safe. They then left the Quick Chek Store and went to some unidentified road where they switched automobiles and the witness stayed at the unidentified spot in one of the automobiles. She testified that the defendant, Vickers, and Prentiss left in the stolen automobile and later returned with a sack; that the three got out of the stolen automobile and got into an automobile with her. They removed their hats and top shirts and put them in the sack. The witness testified that the defendant or Vickers had a gun. The record is not clear when she saw this gun. They then left for Mobile.

The defense was alibi.

Prior to trial the defendant filed a motion to suppress the testimony of the several eye witnesses above referred to, who were able to identify the defendant. The basis of his motion was that a lineup or showup was conducted in the absence of counsel, which should render in-court identifications of defendant by these witnesses inadmissible. United States v. Wade, supra; Gilbert v. California, supra.

According to the testimony at the hearing on the motion to suppress, the Auburn police submitted approximately thirty-one photographs to the witnesses who had seen the robbery. Each of these witnesses selected the photographs of the defendant and Vickers as those of the robbers. There is nothing in the record to indicate that this procedure was suggestive. Sim-

mons v. United States, 390 U.S. 377, 88 S. Ct. 967, 19 L.Ed.2d 1247.

Sometime later but prior to indictment the Auburn police arranged for the defendant and Vickers to be in the sheriff's outer office. Obviously, at this time they were under arrest but we cannot ascertain from the record whether a formal warrant had been issued. There was a one-way view window arranged so that persons in the sheriff's main office could see persons in his outer office. One could not, however, see from the outer office into the main office. The record is not clear as to how many of the eye witnesses were in the main sheriff's office when defendant and Vickers were brought into the outer office. One police officer testified that some of the witnesses were in the sheriff's office. According to the police this viewing was arranged merely to verify the prior photograph identifications. The defendant testified that he had agreed to participate in a line-up but was unaware that he was being observed in the sheriff's outer office at that time.

*Wade* and *Gilbert*, supra, fashion exclusionary rules to the admission of an in-court identification without first determining that it was not tainted by the illegal lineup. The proper test to be applied is that found in Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L. Ed.2d 441:

" . . . [W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

In *Wade*, supra, the court states:

" . . . Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which despite the absence of counsel, are disclosed concerning the conduct of the lineup."

A claim that the conduct of the lineup was so unduly prejudicial as to fatally taint an in-court identification must be determined from the totality of surrounding circumstances. Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387. Here, all of the eye witnesses had a good opportunity, in a well lighted store, to observe the robbers. There was no evidence of any substantial discrepancy between any pre-lineup description and the defendant's actual description. All of the witnesses identified the defendant by picture prior to the lineup. There was no failure to identify the defendant on a prior occasion and all of the witnesses seemed positive of their identifications. We are of the opinion that the trial court properly admitted the in-court identifications. Dawson v. State, 47 Ala.App. 293, 253 So. 2d 362.

Since we have concluded that *Wade* and *Gilbert*, supra, do not require a reversal of this cause, there is no necessity to decide the effect of Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, on this. In this connection see White v. State, 48 Ala.App. 334, 264 So.2d 565; and Haggler v. State, 49 Ala.App. 259, 270 So.2d 690.

The judgment appealed from is therefore due to be affirmed.

Affirmed.

All the Judges concur.