305 So.2d 390

**Hulbert Lawrence DAVIS**

**v.**

**STATE.**

**7 Div. 286.**

Court of Criminal Appeals of Alabama.

Nov. 12, 1974.

Rehearing Denied Dec. 17, 1974.

William J. Baxley, Atty. Gen., Montgomery, and Samuel L. Adams, Sp. Asst. Atty. Gen., Dothan, for appellee, the State.

TYSON, Judge.

The Grand Jury of Shelby County charged Hulbert Lawrence Davis with the second degree burglary of the home of Daniel Kessler. The Jury found the appellant guilty of burglary in the second degree, and the trial court set sentence at nine years imprisonment in the penitentiary.

The home of Daniel Kessler was burglarized in the daytime on September 12, 1973. Mr. and Mrs. Kessler left their home at about 8:30 a. m. She returned at approximately 4:00 p. m., and he returned at approximately 5:00 p. m. Each stated that all the doors and windows were locked when they left. Mrs. Kessler testified that a glass sliding door was open half way when she returned. Both of them testified

Oliver P. Head, Columbiana, for appellant.

that two color television sets, one bedspread, two jewelry boxes with some jewelry inside, one box of duplicate keys, two pillow cases, two bottles of wine, "about $50.00 cash," and six tickets to University of Alabama football games for the 1973 season were missing upon their return. These items included two tickets each to the Alabama-California (September 15), Alabama-Tennessee (October 20), and Alabama-Auburn (December 1) football games. Mr. Kessler testified that each of the missing tickets were to seats 1 and 2, Row 67, Section 10, at Legion Field, Birmingham, Alabama, for the games and dates shown. The value of the property was placed at $3,000.00.

Mr. W. E. Whitlock, a neighbor of the Kesslers, testified that he saw appellant in a pickup truck near the Kessler home between 12:30 p. m. and 1:30 p. m. on September 12, 1973, the day of the burglary. He later viewed appellant at a lineup, where he also identified him.

At a pretrial hearing, the court denied appellant's motion to suppress Mr. Whitlock's testimony.

Roger Lee, a service station operator in Pell City, Alabama, testified that on September 13, 1973, the appellant came to his station and sold him two tickets to the Alabama-California football game to be played September 15, 1973, in Legion Field. He could not identify two ticket stubs shown to him at trial. However, Mr. Lee stated that he sold these same two football tickets, which he purchased from the appellant, to Mr. Howard Bice of Ragland, Alabama, either that day or the following day.

Mr. Howard Bice stated that he purchased two tickets to the Alabama-California football game scheduled for September 15, 1973, on either September 13 or September 14, 1973, from Roger Lee at his service station. Mr. Bice stated that he was introduced to a salesman at the telephone office at Ragland by Mrs. Dickerson. This salesman was one Robert Torbett from Hendersonville, Tennessee. This

took place on Friday, September 14, 1973. At this time he sold Mr. Torbett two tickets to the Alabama-California football game to be played the following day, but could not recall the seat, row, or section number.

Mr. Robert Torbett, a salesman for B & T Utilities, Inc., stated that he took the two Alabama-California tickets, which he purchased from Mr. Bice, to the Rodeway Inn at Oxmoor Road, Birmingham, Alabama, and there left them with Miss Jane Jaffe, the bookkeeper at this Inn. Mr. Torbett stated that he left them with her for delivery to a customer.

Miss Jane Jaffe testified that on Friday morning, September 14, 1973, she received two football tickets to the Alabama-California game to be played at Legion Field in Birmingham on September 15, 1973, from Mr. Robert Torbett. Miss Jaffe testified that the two tickets were for seats 1 and 2, row 67, in section 10, and that she delivered these tickets to Miss Mary Ruth Hollis on Friday afternoon, September 14, 1973, at the motel.

Miss Mary Ruth Hollis testified that on Friday afternoon, September 14, 1973, she came by the Rodeway Inn at Oxmoor Road in Birmingham, Alabama. She further stated that she picked up two football tickets to the Alabama-California game to be played the following day at Legion Field from Miss Jaffe. Miss Hollis further stated that Miss Janet Stringfellow accompanied her to the game on Saturday evening, September 15, 1973, and that the two of them occupied seats nos. 1 and 2 on row 67 of section 10, that they were approached by Mr. Melvin E. Gullion of the Birmingham Police Department.

Police Detective Melvin E. Gullion testified that he received two football ticket stubs from Miss Stringfellow and Miss Hollis at the game that night. Detective Gullion further stated that he had been asked by the Shelby County Sheriff's Department to go to Legion Field and determine who was using the tickets to seats 1

and 2, row 67, in section 10 on the night of the Alabama-California game, September 15, 1973.

Pell City Police Officer Charles S. Scott testified that on September 10, 1973, he had observed the appellant riding in a pickup truck, which bore the same tag number and general description as the truck observed by W. E. Whitlock near the Kessler's home.

Edward Wilson, the owner of Ed's Lounge, a pool hall in Pell City, Alabama, testified that the appellant was in his establishment on either Wednesday or Thursday, September 12 or 13, 1973, and showed him two tickets to the Alabama-California football game and asked "were they worth anything?"

The appellant also presented the testimony of Larry Roe, who stated that he saw the appellant playing pool in Ed's Lounge at Pell City, and observed a man whom he did not know hand the appellant two tickets to the Alabama-California football game. He stated this occurred a day or two before the Alabama-California game on September 15, 1973.

### I

■ Just prior to trial, the appellant moved to suppress the testimony of W. E. Whitlock. At the hearing on this motion, Mr. Whitlock testified that on September 12, 1973, he was riding in his automobile at an intersection some 250 to 300 yards from the Kessler's home. This was between 12:00 noon and 1:00 in the afternoon. He stated that the driver of a pickup truck, which he observed, was a heavy set man with long hair. He stated further that there were three occupants of the vehicle, and that the driver in the pickup truck was the appellant. Mr. Whitlock also testified that he wrote down the tag number of the truck, which was 59 P 3489, and subsequently identified the appellant at a lineup held on September 21, 1973, as being one of the occupants of the pickup truck.

The indictment in this cause was returned on September 20, 1973. At the lineup the following day the appellant was not represented by counsel, and the trial court did not allow any testimony to be presented to the jury pertaining to the identification at such lineup.

At trial, the appellant was described by Mr. Whitlock as being a large man, over six feet one and a half inches, and weighing about 280 pounds. His hair was about shoulder length, and he wore a mustache.

The trial court denied the appellant's motion to suppress, but permitted Mr. Whitlock to testify as to his identification of the appellant, based upon his observation of the appellant in the vehicle on September 12, 1973, near the home of Mr. and Mrs. Kessler.

Since there was no prior discrepancy in this identification process, we believe the procedure here used to be proper. Haggler v. State, 49 Ala.App. 259, 270 So.2d 690; White v. State, 48 Ala.App. 334, 264 So.2d 565; Havard v. State, 50 Ala.App. 147, 277 So.2d 421, and authorities therein cited.

### II

■ The appellant urges that the action of the trial court in excusing certain jurors over the age of sixty-five years was erroneous. From the record [R. p. 10]:

"MR. HEAD: Let the record show, that during the empaneling of the jury, this morning, the jury panel for this case, that after the jurors were otherwise qualified, the Court, of it's own motion, without the defendant being present in court, summarily excused all jurors, who were called to jury service, who were over the age of sixty-five years old. By this, several jurors—five, six or seven, were excused. The defendant excepts to this and, let the record further show, that the Trial Court, in excusing these jurors, said this, or this in substance: 'That if the Court did not take this action, excusing these jurors, who were over sixty-five years old, that some Defense Counsel might cause a reversal of

a case.' The defendant feels that tends to work an unfairness against the defendant and identifying the defendant and his counsel in trying to work a reversal of the case and it tends to place the defendant on the other side of justice, so to speak, from the Court. We feel that's improper and we move for a mistrial on that basis.

"THE COURT: Let the record further show, that this defendant, by the docket, the criminal docket, of the Circuit Court of Shelby County, for the week beginning December 10, 1973, should have been in court at 9:00 o'clock a. m. today and remain in court, unless excused by the Court, throughout the day; that the Court knows from experience, as a defense counsel, that when a defense counsel challenges a juror for cause, over the age of sixty-five years of age, it is error for the Court [to] overrule such challenge of such juror over the age of sixty-five years."

The proceeding took place in the presence of the venire from which the trial jury was selected. The appellant's motion for a mistrial was denied. We believe such action to be without error as for aught appearing in this record, such prospective jurors requested that they be excused. Title 30, Section 21, Code of Alabama, 1940, and Title 30, Section 55(8), Code of Alabama, 1940.

We do not construe the above remarks as tending to cast aspersion upon either the appellant or his counsel. Such comment makes no reference to the case at bar or to the appellant. The trial court properly overruled the appellant's motion for a mistrial. Phillips v. Beene, 16 Ala. 720; Hinkle v. State, 50 Ala.App. 215, 278 So.2d 218, and authorities therein cited.

III

■ The appellant notes a number of instances in the transcript of the evidence

in which questions were asked by the trial court to elicit evidence.

In Brandes v. State, 17 Ala.App. 390, 85 So. 824, we find the following:

". . . The unquestioned province of the court—in fact, the solemn and sacred duty of a trial judge—is the development and establishment of the truth, and in this connection it is always permissible for the court, and if it appears necessary for him to do so it is his duty, to propound to witnesses such questions as it is deemed necessary to elicit any relevant and material evidence, without regard to its effect, whether beneficial to the one party or the other. Beal v. State, 138 Ala. 94, 35 So. 58. In fact, it is a sacred duty of a judge, both in civil and criminal cases, to give strict attention to the evidence, and to all facts and incidents attendant upon the trial, to propound questions to witnesses if in his judgment he deems it necessary, and to supervise and control the proceedings before him, with a view that justice may not miscarry. As before stated, there is nothing in the record before us even tending to show that the trial judge transcended his authority or abused the discretion with which, under the law, he is vested."

See also Hinkle v. State, supra.

We have carefully examined each of the instances set forth and find that only on three occasions were objections imposed by the appellant. As to these three [R. pp. 141–142, 153], the appellant's objections were sustained.

Where, as here, no objections are made or exceptions taken to such questions, or comments, nothing is presented here for review. Rice v. Hill, 278 Ala. 342, 178 So.2d 168; State v. Boyd, 271 Ala. 584, 126 So.2d 225, and cases therein cited.

IV

■ The appellant objected to the introduction into evidence of State's Exhibit

4, which was a photograph of a blackboard on which the following words were written: "Section 10, Row 67, Seats 1 and 2."

Appellant contends the admission into evidence of this photograph was irrelevant and immaterial, and therefore illegal, and as such constitutes reversible error.

It is clear, however, in reading the record that such writing refers to the location of the missing football tickets allegedly taken from the home of Mr. and Mrs. Kessler. Each of them, in their testimony, identified this location at Legion Field in Birmingham as being the location of their missing tickets. They had made a written record of this.

Miss Jaffe, the bookkeeper at the Rodeway Inn, testified to this location of the tickets, as did Miss Hollis and Miss Stringfellow, who occupied the seats called for by these tickets at the time they were approached by Detective Gullion on the night of the game at Legion Field, Birmingham, Alabama.

The trial court did sustain the appellant's objection to the State's offering into evidence the ticket stubs.

It is clear therefore that such information was relevant and material to the location of the tickets which were missing and which tickets were allegedly sold by the appellant to Mr. Lee. Mr. Lee stated that he sold these tickets to Mr. Bice, who, in turn, sold them to Mr. Torbett, and who delivered these to Miss Jaffe at the Rodeway Inn.

Moreover, the writing shown in the photograph is cumulative of these witnesses' testimony.

A fact is admissible if it has probative value upon a provable matter, even though that value may be very slight and weak. Lucy v. State, 49 Ala.App. 116, 269 So.2d 134, and authorities cited therein.

Thus, we find the rule of relevance and materiality stated in Mattison v. State, 55 Ala. 224:

". . . In inquiries of fact, dependent on circumstantial evidence for their solution, no certain rule can be laid down, which will define, with unerring accuracy, what collateral facts and circumstances are sufficiently proximate to justify their admission in evidence. Human transactions are too vaired to admit of such clear declaration of the rule. Whatever tends to shed light on the main inquiry, and does not withdraw attention from such main inquiry, by obtruding upon the minds of the jury matters which are foreign, or of questionable pertinency, is, as a general rule, admissible evidence. . . ."

Although the evidence of the seat number, row, and section in question of the tickets is not dispositive of the issue of the appellant's possession of such tickets, such information does identify the property which was allegedly stolen. We, therefore, find no error in the admission of the photograph showing such information.

V

■ Finally, the appellant asserts as error an instance during the cross-examination of State's witness Sheriff C. P. (Red) Walker. In this, the appellant sought to show, through Sheriff Walker, that another party had also been indicted for the alleged offense.

The trial court correctly refused to allow the introduction of the indictment of another party. Such indictment is but an accusation in writing. Title 15, Section 228, Code of Alabama 1940. The refusal of the trial court to admit this was proper. Ward v. State, 15 Ala.App. 174, 72 So. 754; Brown's Case, 120 Ala. 342, 25 So. 182; Orr v. State, 225 Ala. 642, 144 So. 867.

## VI

 Since the appellant had both moved to exclude the evidence at the close of the State's case, and also, in writing, requested the affirmative charge, the issue of the sufficiency of the State's evidence is before us for review.

In Wicks v. State, 44 Ala. 398, the court stated that the gravamen of the offense charged here is breaking and entering into the house with intent to steal. The applicable elements of burglary in the second degree are, (1) breaking, (2) entering, (3) with intent to steal or to commit a felony. Behel v. State, 40 Ala.App. 689, 122 So.2d 537; Eason v. State, 48 Ala.App. 471, 265 So.2d 913.

The question of the appellant's intent is one for the jury to determine from a consideration of all the evidence. Waid v. State, 39 Ala.App. 255, 97 So.2d 598, and authorities therein cited.

We are of the opinion that under the evidence adduced the court properly submitted this factual issue to the jury; hence, the denial of the motion to exclude and the request for the general affirmative charge were proper. Washington v. State, 44 Ala.App. 516, 214 So.2d 867, and cases herein cited.

We have carefully examined this record, as we are required to do, and find no error therein. The judgment is due to be and the same is hereby

Affirmed.

All the Judges concur.

## ON REHEARING

TYSON, Judge.

Appellant asserts in brief that Mr. Whitlock did not describe the appellant as wearing a mustache in his identification. There is on page 56 of the record a photograph of the appellant which was received in evidence without objection which depicts the appellant "with mustache."

Opinion extended, application overruled.

All the Judges concur.