Earl Benefield was indicted and convicted for theft of property in the first degree. Sentence was twenty years' imprisonment. Two issues are raised on appeal.
 I
The evidence was sufficient to sustain the verdict. The defendant was charged with "obtaining by deception" control over a tractor under Alabama Code 1975, § 13A-8-3. Section13A-8-2 states: "A person commits the crime of theft of property if he: * * * (2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his property." Deception occurs when a person "(p)romises performance which the defendant does not intend to perform or knows will not be performed. Failure to perform, standing alone, however, is not proof that the defendant did not intend to perform." § 13A-8-1 (1)(f). Under our Criminal Code "any deception which imposes upon the confidence of the victim, including a promise the offender has no intention of performing, should not find protection from criminal sanction. . . ." Commentary following § 13A-8-5. See also Andersen v.State, 418 So.2d 967, 969 (Ala.Cr.App. 1982); Model Penal Code § 223.3 (1) (1980).
John Colvin, the regional sales manager for Yanmar Tractor, Inc., was the only witness to testify for the State. The evidence for the prosecution proved that the defendant, doing business as M M Auto Sales, entered into a floor plan financing agreement with Yanmar on February 4, 1983. Under this agreement Yanmar delivered *Page 701 
equipment and between 10 and 18 tractors with a combined value of $119,980.68 to M M Auto Sales. The indictment in this case involved tractor number 41734 valued at $4,890.00. The defendant sold this tractor to Jerry Gaye on September 10, 1983, for $8,500.00. Under the financing agreement, the defendant was to pay Yanmar within two business days of the sale of a tractor. On June 24, 1983, an inventory disclosed that M M still had all the tractors and equipment.
On October 17, 1983, Colvin visited the M M dealership and found no tractors on the premises. Colvin testified that Yanmar never received payment for tractor number 41734 or any other tractor.
The defendant gave Colvin three different explanations for the whereabouts of the tractors. Initially, the defendant said that Colvin had had them picked up. About one hour later, the defendant told Colvin that his (defendant's) secretary had paid Yanmar's auditors cash for four or five tractors and Colvin had had the rest picked up. Later that same day, the defendant told Colvin that "there were a couple of tractors on demo." The defendant got these tractors and Colvin picked them up the next day. At that time the defendant "had a story about he was going to get a $75,000.00 note from some place. And we [Yanmar] would get put in the pool for payment."
Mrs. Benefield, the defendant's wife, testified in her husband's defense. She maintained that she was the owner of M 
M Auto Sales and that the defendant never owned any part of it. She admitted that she never paid Yanmar for tractor 41734 but testified that she had paid Yanmar a total of $10,911.00. According to Mrs. Benefield, M M Auto Sales ran into financial difficulty and was forced into bankruptcy.
More than mere failure to perform a promise is required to support an inference of deceptive intent. Alabama Code 1975, §13A-8-1 (1)(f). A false promise must be distinguished from a broken promise.
 "A false promise is to be distinguished from a broken promise, i.e., a promise which the promisor originally intends to keep but which he later decides to break. One who makes a false promise can be properly said to be guilty of fraud; but one who breaks a promise he meant to keep, though not altogether admirable, cannot properly be termed fraudulent." W. LaFave and A. Scott, Criminal Law
657, n. 17 (1972).
Annot., 19 A.L.R.4th 959, 964 (1983).
"[A] present intent not to comply with a promise or a statement as to a future act can be the basis of the crime of obtaining money or property by false pretenses." In such prosecutions it is essential to establish that there was "an intent at the time the representation was made not to comply with a promise or statement as to a future act and to guard against the conviction of persons who have been guilty of no more than a breach of contract." 19 A.L.R.4th at 964.
The State presented a prima facie case of theft. Here, according to the State's evidence, the defendant not only failed to pay for tractor number 41734 but failed to pay forany of the ten to eighteen tractors delivered to him. There was no "isolated" failure to perform. People v. Kamsler,67 Ill. App.2d 33, 214 N.E.2d 562, 567 (1966) (Evidence of other similar failures to perform may be considered to establish that defendant never intended to perform.).
"[F]raudulent intent need not be proven by direct substantive evidence, but can be inferred from the accused's conduct and the circumstances of the case." Cottonreeder v. State,389 So.2d 1169, 1174 (Ala.Cr.App. 1980). "[A] preconceived intention not to pay for goods purchased may be evidenced by circumstances, such as the fact that the purchaser had no reasonable expectation of being able to pay for them, [or] . . . an unexplained refusal shortly after the sale to pay for the goods in cash as agreed." 37 Am.Jur.2d Fraud And Deceit § 478 (1968). See also 5 Am.Jur.P.O.F.2d 727-781 (1975). *Page 702 
Although one of the most difficult burdens the prosecution must bear is proving the present intention of the promisor not to perform, that burden was met in this case. Here, not only did the defendant fail to make any payment for any of the tractors delivered, he misrepresented the whereabouts of the tractors when they were discovered missing and never informed Yanmar that tractor number 41734 had been sold. The State's evidence, when pitted against the defense, that the failure to pay was merely the result of "economic conditions and probably bad business judgment", Appellant's Brief, p. 16, created a question that only a jury could resolve. Here, the State proved more than a mere failure to pay. The failure to pay plus the defendant's false representations and explanations created a jury issue. Cottonreeder, 389 So.2d at 1174.
 II
The defendant alleges that defense counsel was prevented on cross examination of State's witness John Colvin from showing that "Yanmar caused other theft warrants to be issued against bona fide purchasers for value. That these cases were dropped when all of their merchandise except the one in question was accounted for." Appellant's Brief, p. 18.
The basis for this contention occurred when the trial court sustained the State's objection when defense counsel asked Colvin, "Were there any other warrants issued against anybody about stealing these tractors?" This particular question as phrased called for immaterial and irrelevant evidence. Orr v.State, 225 Ala. 642, 644, 144 So. 867 (1932) (Whether another was arrested for same crime was immaterial and irrelevant in rape prosecution.); Davis v. State, 54 Ala. App. 115, 120,305 So.2d 390 (1974) (Defendant properly precluded from showing through sheriff that another party had also been indicted for same offense since indictment is merely an accusation.). "It is always permissible for a defendant accused of a specific crime, to show that another, and not he was the guilty party; but it is not competent for the accused to show, merely, that another was suspected of the commission of the crime." Brown v. State,120 Ala. 342, 348, 25 So. 182 (1899).
Additionally, it cannot be disputed that, in his examination of the defendant's wife, defense counsel had ample opportunity to show what happened to the tractors.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.