Lionel C. Baker was indicted for the offense of theft of property in the first degree, in violation of § 13A-8-3, Code of Alabama 1975. The jury found Baker guilty as charged in the indictment, and he was sentenced to seven years in the state penitentiary and was ordered to pay court costs, attorney fees, restitution in the amount of $1,200, and $50 to the victims crime compensation fund. Two issues are raised on appeal.
Baker contends that the prosecution did not prove a case of theft of property by deception because more than mere failure to perform a promise is required to support an inference of deceptive intent.
Section 13A-8-2, Code of Alabama 1975, states: "A person commits the crime of theft of property if he . . . (2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his property." *Page 947 
Section 13A-8-1(1)(f), Code of Alabama 1975, states that deception occurs when a defendant knowingly "[p]romises performance which the defendant does not intend to perform or knows will not be performed. Failure to perform, standing alone, however, is not proof that the defendant did not intend to perform."
Failure to perform a promise, together with evidence that the promise was made with the intention not to perform rather than merely broken, may support an inference of deceptive intent in a prosecution for theft of property by deception. Benefield v.State, 469 So.2d 699 (Ala.Cr.App. 1985). Evidence of other similar failures to perform may be considered to establish that the defendant never intended to perform the promise made, and the defendant's fraudulent intent can be inferred from the defendant's conduct and the circumstances of the case.Benefield, supra, 469 So.2d at 701.
In the instant case, Baker approached William Vonce Terrell about reroofing his house and quoted Terrell a price of $1,200. Terrell and his wife, Dorothy Ann, thought Baker's price was reasonable and said that they would go to the Teachers Credit Union and get the money. The Terrells told Baker to come back by another day and talk to Mrs. Terrell about the roofing estimate.
Baker later came by and talked to Mrs. Terrell about fixing her roof. On August 10, 1990, Mrs. Terrell signed a contract for the roofing job with Baker and gave him $1,200 in advance. Baker also discussed with her repairing her deck for an extra $400. Mrs. Terrell told him that she did not have any extra money, but Baker said that she could pay him monthly for the repair work on the deck. Mrs. Terrell further stated that Baker never started on the decking.
The day after the roofing contract was entered into, Mrs. Terrell called Baker, awakening him, and asked him what time he was coming over to start the roofing project. Baker stated that he would go to the hardware store to check on the color of the shingle Mrs. Terrell wanted and that he would be by "in a little while." Later that afternoon, Baker finally appeared and promised Mrs. Terrell that his men would have the roofing materials there by the next day. Neither Baker nor the roofing materials appeared the next day. Mrs. Terrell kept calling Baker, and about eight or nine days later, after constant telephoning, Baker went to the Terrells' house, and Mrs. Terrell asked him when his men were going to bring the roofing materials to her house.
Baker then told Mrs. Terrell that the building materials people would bring the materials that day. Baker then wrote a note telling the materials people where to place the materials on the Terrells' property, and he put the note on the Terrells' screen door. Mrs. Terrell waited all that day and stayed home all the next day, but the materials did not arrive.
Mrs. Terrell called Baker the next morning, and Baker told her that he didn't know why the materials were late but that he would "get on him." Baker came later that day and took off the Terrells' old roof and removed much of the underlying wood, claiming it would have to be replaced, and requested an additional $200 to buy lumber because his wife had taken the Terrells' money and "messed it up." Baker assured Mrs. Terrell that the new roofing would be delivered the next day. The next day, Mrs. Terrell called Baker and told him to come put a plastic cover on the roof because it was leaking from the rain. Baker told her he would be there in 30 minutes, but he never came. Mrs. Terrell stated that when Baker never came back to complete the work, she consulted a lawyer.
Additionally, one of Baker's prior clients, Ruth Ford, testified that he had not performed the remodeling work on her house as he had promised, despite her advance payment to him of $2,160. According to Ford, Baker told her that he had spent her money and that he did not have money to buy the materials for the remodeling work. Ford gave Baker an additional $650 to buy shingles, but Baker never completed the contract. *Page 948 
This evidence clearly shows that Baker not only failed to perform his initial promise to reroof the Terrells' house but that he also failed to perform many subsequent promises made to Mrs. Terrell with respect to the roofing contract. Baker's failure to perform the initial contractual promise to the Terrells, when combined with Baker's failure to perform the contractual promise to remodel Ruth Ford's home and Baker's failure to perform the repeated subsequent promises to the Terrells, constitutes sufficient evidence from which to infer that Baker never intended to perform on the contract to reroof the Terrells' house. Likewise, the jury could infer the necessary intent to defraud from Baker's evasive conduct, delaying tactics, admissions that he had spent his client's money without purchasing materials, and repeated requests for additional money. Hence, the state clearly presented a prima facie case of theft of property by deception.
 II.
Baker contends that the trial court erred by allowing Ruth Ford to testify that Baker did not perform a contract which he had executed with her. We disagree.
The exclusionary rule requires that generally evidence of other or collateral crimes is not admissible as substantive evidence to establish the guilt of the accused with respect to a particular crime. C. Gamble, McElroy's Alabama Evidence § 69.01(1) (4th ed. 1991).
We hold that Ms. Ford's testimony was admissible under two recognized exceptions to the general exclusionary rule: (1) to prove Baker's specific intent to defraud the Terrells and (2) to prove a single plan, design, scheme, or system.McElroy's Alabama Evidence § 69.01(5), (6).
One of the elements of the crime of theft of property is the specific intent to defraud. § 13A-8-2, Code of Alabama 1975. Where the accused is charged with a crime that requires intent, then prior criminal acts are admissible to show that the accused had the necessary intent when he committed the presently charged crime. Saffold v. State, 494 So.2d 164
(Ala.Cr.App. 1986).
We also held in Saffold, supra, that evidence of other prior acts of the defendant were admissible to show that the specific offense charged and the collateral transactions were committed pursuant to a single plan, design, scheme, or system. Saffold, supra, 494 So.2d at 172-73. In the instant case, the testimony of the Terrells and Ford clearly show a plan, design, scheme, or system initiated by Baker and carried out identically in both contracts. In Ford's contract, Baker had agreed to do certain roofing and remodeling work but he had only partially performed. As he did with the Terrells, Baker would importune Ford with requests for additional monies to complete the job. When Baker had acquired what he believed to be the most money he could get from his victims, he simply left the work undone and both victim's houses were damaged by rain.
Hence, Ford's testimony was clearly admissible under the specific intent and common plan, design, or scheme exceptions to the exclusionary rule.
The foregoing opinion was prepared by JAMES H. FAULKNER, Retired Justice, Supreme Court of Alabama, serving as a judge of this court, and his opinion is adopted as that of this court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.